IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERRY PINNELL,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 19-5738 |
| | : | |
| **TEVA PHARMACEUTICALS USA,** | : | |
| **INC.,** *et al.* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                              **March 31, 2020**

In 2011 and 2019, our Court of Appeals reviewed the level of specific pleading necessary for a participant in an employer's 401(k) plan to state a breach of fiduciary duty claim against the plan and employer fiduciaries under ERISA. The Supreme Court yesterday denied a plan's petition for certiorari challenging our Court of Appeals' 2019 standard. Directed by these guideposts, we today evaluate extensive allegations challenging plan and employer fiduciaries' choices of plan options for the participants as too costly and as a breach of fiduciary duty without sufficient diligence. The participants, mindful of our Court of Appeals' direction and Rule 11, amended their complaint and plead charts, comparative studies, and specific facts necessary to proceed into discovery. We deny the fiduciaries' motion to dismiss.

**I.     Alleged facts**

From at least December 2013 to June 2019, Jerry Pinnell, Jeremy Fernandez, and Shane Perrilloux worked for Teva Pharmaceuticals and participated in the Teva Pharmaceuticals Retirement Savings Plan investing a percentage of their income in the options offered by the Plan.[1]

The Plan's fiduciaries managed assets totaling $1.9 billion, rendering the Plan among the largest defined contribution retirement plans in the country.[2] As a "jumbo plan," the Plan has

large assets providing its fiduciaries substantial bargaining power regarding fees and expenses.[3] Defined contribution retirement plans provide retirement benefits based solely on each participant's contribution to his or her account.[4] Participants in the Plan could contribute one to seventy-five percent of their compensation to their 401(k), which their employer Teva matched.[5] Participants during the Class Period, December 6, 2013 to June 28, 2019, chose from twenty-seven investment options selected by the Investment Committee.[6] The Plan's offerings included several actively managed funds, charging higher fees than passively managed funds;[7] twenty-one retail share classes, when lower-cost share classes like institutional share classes were available;[8] and mutual funds, charging higher fees than other investment vehicles like collective trusts and separate accounts.[9]

In 2017, twenty-two of the twenty-seven investment options in the Teva Plan cost more than comparable funds; a comparison of their expense ratios highlights excessive fees borne by Plan participants.[10] For example, the T. Rowe Price Retirement 2035, 2040, 2045, 2050, 2055, and 2060 target date funds had expense ratios of .70 percent and .72 percent, notably higher than the category median fee of .56 percent reported by the Investment Company Institute in 2015.[11] The Fidelity Contrafund and the Cohen and Steers Real Estate Securities Z had .82 percent and .79 percent expense ratios respectively, almost three times the .31 percent median for domestic equity funds.[12] The participants also offer comparisons of Plan investment options to similar, lower-cost alternatives in various tables, such as comparing Fidelity Contrafund's expense ratio (.82 percent) with TIAA-CREF Large-Cap Growth Index institutional share class expense ratio (.05 percent), a passively managed fund, and Vanguard U.S. Growth Fund Admiral Shares expense ratio (.28 percent), an actively managed fund.[13]

The Teva Plan also charged excessive recordkeeping fees, or fees paid for the administrative services provided to a defined contribution plan by the plan's recordkeeper.[14] The number of participants in a plan dictates the cost of providing recordkeeping services—prudent fiduciaries leverage jumbo plans by negotiating lower per-participant recordkeeping fees.[15] Plan fiduciaries failed to prudently manage and control the Plan's recordkeeping costs, as the per-participant recordkeeping fee was higher than the appropriate amount levied on jumbo plans.[16]

On June 28, 2019, the Defendants converted all mutual fund investment options to collective trust investment options, which have lower or no administrative costs.[17]

Mr. Pinnell, Mr. Fernandez, and Mr. Perrilloux, on behalf of themselves and others similarly situated, then sued both the Plan fiduciaries and Teva Board under the Employee Retirement Income Security Act of 1974 (ERISA). They sue their employer Teva and Investment Committee Defendants (the Plan fiduciaries) for:

- failing to adequately review the Plan's investment portfolio to ensure prudence of investment options, maintaining expensive investments despite the availability of identical lower-cost alternatives[18]

- failing to act in the best interests of the participants by choosing investment fund options favoring the fund provider over the participants[19]

- knowing or should have known about the advantages of collective trusts and separately managed accounts and should have considered offering these lower-cost alternatives to mutual funds earlier in the Class Period[20]

- failing to investigate whether they could replace all the actively managed funds with passively managed index funds given the lower fees of index funds[21]

3

- failing to consider converting the Plan's expensive retail class shares to less costly institutional class shares, available to investors with assets as large as those in the Plan, or to the lowest-cost class of shares available to the Plan[22]

- paying excessive administrative fees, or "recordkeeping fees," because they failed to leverage the large number of Plan participants to negotiate lower fees[23]

- failing to establish an independent system of review to ensure participants in the Plan were being charged appropriate and reasonable fees.[24]

The participants also allege Teva and its Board of Directors failed to adequately monitor the Plan fiduciaries.[25] The participants allege Defendants' failure to act prudently lost the Plan millions of dollars.[26]

## II. Analysis

Defendants move to dismiss arguing the participants failed to allege Teva's fiduciary process had fatal flaws as required by our Court of Appeals' decision in *Renfro*,[27] instead complaining of conduct laying squarely within the Plan fiduciaries' legal discretion.[28] The participants argue their specific factual allegations more closely mirror those our Court of Appeals found sufficient at this preliminary stage in *Sweda* rather than the conclusory allegations dismissed in *Renfro*. We agree with the participants at this preliminary stage.

The Employee Retirement Income Security Act of 1974 imposes fiduciary duties of loyalty and prudence on employers and plan fiduciaries.[29] Our Court of Appeals dubbed these twin fiduciary duties "the highest known to the law."[30] A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries… for the exclusive purpose of…providing benefits to participants and their beneficiaries; and … defraying reasonable expenses of administering the plan."[31] A fiduciary must exercise "the care, skill,

4

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[32]

Our Court of Appeals instructs us to avoid "pars[ing] [the complaint] piece by piece to determine whether each allegation, in isolation, is plausible."[33] We must instead complete a "careful and holistic evaluation" of a complaint alleging violations of the Act under a totality of the circumstances approach.[34] We must also take the participants' factual allegations as true and draw every reasonable inference from them in their favor.[35]

Nine years ago in *Renfro v. Unisys Corporation*, our Court of Appeals affirmed a dismissal of a complaint for failure to state a claim of breach of fiduciary duty under ERISA.[36] Mr. Renfro alleged Unisys breached its fiduciary duties in composing the mix and range of investment options in the Unisys defined contribution plan.[37] But Mr. Renfro did not challenge the prudence of any particular investment option, instead focusing broadly on the Plan fiduciaries' decision to include an array of Fidelity retail mutual funds.[38] Neither did Mr. Renfro compare the Unisys plan's investment options with similar, lower-cost alternatives.[39] Our Court of Appeals held: "[T]he range of investment options and the characteristics of those included options—including the risk profiles, investment strategies, and associated fees—are highly relevant and readily ascertainable facts against which the plausibility of claims challenging the overall composition of a plan's mix and range of investment options should be measured."[40] In dismissing the complaint, our Court of Appeals considered, among other factors, the Unisys plan's offering of seventy-three distinct investment options, its inclusion of a variety of risk and fee profiles within the offered retail mutual funds, and its inclusion of several non-mutual fund investment vehicles such as collective trusts and company stock.[41] Our Court of Appeals

5

dismissed Mr. Renfro's "conclusory assertions" and "general allegations of prudence and disloyalty" for failure to state a claim.[42]

Last year in *Sweda v. University of Pennsylvania*, our Court of Appeals reversed a district court's dismissal of a fiduciary duty claim more specifically plead than in *Renfro*.[43] Our Court of Appeals emphasized *Renfro* did not hold "a meaningful mix and range of investment options insulates plan fiduciaries from liability for breach of fiduciary duty."[44] The University of Pennsylvania Plan included, depending on the year, seventy-eight to 118 investment options.[45] Among her allegations, Ms. Sweda claimed the University of Pennsylvania selected and retained higher cost retail class shares despite the availability of lower-cost institutional class shares; failed to solicit competitive bids to assess the reasonableness of Plan recordkeeping fees; and included a table comparing Plan options with readily available, cheaper alternatives.[46] Ms. Sweda also compared Plan fiduciary decisions with the practices of similarly situated fiduciaries.[47] Our Court of Appeals held: "While Sweda may not have directly alleged how [the University of Pennsylvania] mismanaged the plan, she provided substantial circumstantial evidence from which the District Court could 'reasonably infer' that a breach had occurred."[48] The University of Pennsylvania argued it employed a prudent process, which our Court of Appeals described as a merits-based argument "misplaced" at the early stage of a motion to dismiss.[49]

In addition to this direct instruction for our Court of Appeals, we also find guidance from persuasive reasoning from other federal courts. For example, in the Court of Appeals for the Eighth Circuit, plaintiffs relying on such circumstantial evidence to sustain their claims for breach of fiduciary duties "must provide a sound basis for comparison—a meaningful benchmark"—to show a prudent fiduciary in like circumstances would have selected a different

fund.[50] In *Karg v. Transamerica Corporation*, the court for the Northern District of Iowa denied a motion to dismiss a complaint alleging fiduciaries' retention of six under-performing investment options breached their duty of prudence.[51] The court held Mr. Karg compared the plan's underperforming funds to the meaningful benchmarks of competing funds and their benchmark indices, establishing a plausible claim for breach of the fiduciary duty of prudence.[52]

In *Divane v. Northwestern University*, the Court of Appeals for the Seventh Circuit affirmed the district court's dismissal of a complaint against a plan with hundreds of investing options after allowing parties over a year of discovery.[53] Among her allegations, Ms. Divane claimed Defendants failed to act prudently by providing too many investment options, some of which were too expensive and underperforming, and by paying two recordkeepers instead of one.[54] While the court recognized the industry's trend toward low-cost index funds, the court held the plan indeed did offer low-cost index funds and dismissed Ms. Divane's allegation the plan's offering of numerous additional funds as well was imprudent.[55] In its decision, the court relied on the plan's offering of over 400 investment options, a large offering "making a claim of imprudence less plausible."[56] In comparison, the Teva Plan offers only twenty-seven investment options.[57] The court in *Divane* also accepted Northwestern's explanation for using a multiple recordkeeping arrangement following a year of discovery: Participants would have lost access to the Traditional Annuity and any funds invested in the annuity would have been subject to a 2.5% surrender charge.[58] Unlike the Teva Plan fiduciaries, Northwestern provided a plausible explanation for failing to pay a per-participant rate as low as thirty-five dollars.[59] We also do not have the benefit of discovery as yet and these issues may be better addressed then.

In *Nicolas v. Trustees of Princeton University*, Judge Thompson of the District Court for the District of New Jersey partially granted and partially denied a motion to dismiss a complaint

7

alleging violation of fiduciary duties.[60] Ms. Nicolas alleged plan fiduciaries failed to leverage the plan's large size to reduce administrative costs and recordkeeping fees and to remove two specific funds carrying unreasonably excessive fees.[61] In denying the motion to dismiss the claims of breach of prudence, Judge Thompson distinguished *Renfro*, holding Ms. Nicolas, unlike Mr. Renfro, alleged "specific breaching conduct: failing to conduct a competitive bidding process; failing to use significant bargaining power to negotiate lower fees; retaining two recordkeepers; and failing to remove two particularly unreasonable funds. Other courts to have considered substantially similar complaints have found them to survive motions to dismiss for similar reasons."[62]

Today's complaint challenging Teva's decisions much more closely resembles the allegations our Court of Appeals held survived dismissal in *Sweda* than the allegations in *Renfro*. The participants allege the Plan fiduciaries maintained expensive investments despite the availability of identical but lower-cost alternatives, including, but not limited to, investments in retail class shares instead of lower-cost institutional class shares.[63] They included three tables comparing investment options offered by the Plan to similar or identical lower-fee alternatives and comparing expense ratios to median fees in the same category.[64] They also alleged Defendants failed to monitor or control the Plan's recordkeeping expenses, citing to case law demonstrating per-participant fees for a jumbo plan should peak at less than $50.[65] Unlike the *Renfro* plaintiffs' allegations, the participants alleged specific breaching conduct, similar to the allegations Judge Thompson found survived dismissal in *Nicolas*.[66] In *Sweda*, our Court of Appeals emphasized the importance of a complaint's inclusion of "specific comparisons between returns on Plan investment options and readily available alternatives;"[67] the Teva Plan

participants plausibly plead numerous and specific factual allegations comparing the Plan's investment options to similar lower-cost alternatives.

Defendants argue, unlike in *Sweda*, the participants failed to allege sixty percent of the Plan's investments underperformed appropriate benchmarks and Plan fiduciaries failed to negotiate a cap on recordkeeping fees.[68] But the participants plead under Rule 11 a table listing at least twelve investment options for which the Plan fiduciaries could have switched to lower-fee share classes, in addition to numerous other comparisons.[69] They also plead the Plan fiduciaries failed to prudently manage and control the Plan's recordkeeping fees, citing case law to support their fact allegation jumbo plans can leverage their size to minimize recordkeeping fees.[70] Defendants also argue *Sweda* requires plaintiffs to compare plan investment options with lower-cost alternative funds in addition to alleging plan mismanagement, which Defendants mistakenly assert is "not pled here."[71] Unwittingly, Defendants make the case for why the Teva Plan participants' allegations resemble those in *Sweda*.

Defendants also attack the accuracy of some of the participants' comparisons to alternative funds. But we cannot resolve factual disputes at the motion to dismiss stage.[72] We also take the participants' well-pleaded factual allegations as true and draw every reasonable inference from them in their favor.[73] This factual disagreement points to the need for discovery. As Judge Thompson in *Nicolas* explained: "Defendant raises factual questions about whether the alternative funds Plaintiff suggests… are apt comparisons—and, therefore, whether the underperformance Plaintiff depicts is an accurate portrait… Such questions do not warrant dismissal—to the contrary, they suggest the need for further information from both parties."[74]

Our Court of Appeals in *Renfro* does not require us to dismiss a complaint alleging breach of fiduciary duty for a Plan including a meaningful mix and range of investment

options.[75] Defendants argue the employees must allege fatal flaws in the fiduciary process but instead only alleged the Plan fiduciaries did not select the lowest-cost investment options in every instance.[76] But the participants plausibly alleged Defendants failed to adequately review the Plan's investment portfolio to ensure prudence of investment options, maintaining expensive investments despite the availability of "virtually identical" lower-cost alternatives.[77] The participants did not levy conclusory allegations of failing to select the lowest-cost investment options in every instance; they included specific comparisons to demonstrate Plan fiduciaries should have considered virtually identical or similar, lower-cost options such as collective trusts and separately managed accounts, passively managed index funds, and institutional class shares.[78] The participants also alleged excessive recordkeeping fees, a plausible allegation despite the participants' initial miscalculation based on lack of information.[79] Under the totality of the circumstances approach, the participants plead substantial circumstantial evidence from which we can reasonably infer a breach might have occurred.

## III. Conclusion

We deny Defendants' motion to dismiss for failure to state a claim in the accompanying Order.

---

[1] ECF Doc. No. 10 at ¶¶ 13-15. We use the pagination assigned by the CM/ECF docketing system.

[2] *Id*. at ¶¶ 5, 49.

[3] *Id.* at ¶ 5.

[4] *Id.* at ¶ 33.

[5] *Id.* at ¶ 36.

[6] *Id.* at ¶¶ 6, 38.

[7] *Id*. at ¶¶ 73, 93.

[8] *Id*. at ¶¶ 103, 104.

[9] *Id.* at ¶ 86.

[10] *Id.* at ¶¶ 95-96.

[11] *Id.* at ¶ 95.

[12] *Id.*

[13] *Id.* at ¶ 111.

[14] *Id.* at ¶ 115.

[15] *Id.* at ¶ 118.

[16] *Id.* at ¶¶ 124-125.

[17] *Id*. at ¶¶ 81, 83, 86.

[18] *Id.* at ¶¶ 6, 7, 100.

[19] *Id.* at ¶ 57.

[20] *Id* at ¶¶ 105-110.

[21] *Id*. at ¶¶ 111-114.

[22] *Id.* at ¶¶ 77, 80, 100-104.

[23] *Id*. at ¶¶ 115-127.

[24] *Id.* at ¶ 58.

[25] *Id.* at ¶ 139.

[26] *Id.* at ¶ 94.

[27] *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3d Cir. 2011).

[28] To state a fiduciary breach claim under the Employee Retirement Income Security Act of 1974 Plaintiffs must allege (1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan. *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 328 (3d Cir. 2019), *cert. denied*, --- U.S. ----, No. 19-784, 2020 WL 1496631 (Mar. 30, 2020). Defendants argue the participants failed to adequately allege they breached fiduciary duties.

[29] 29 U.S.C. § 1104(a)(1).

[30] *Sweda*, 923 F.3d at 333.

[31] 29 U.S.C. § 1104(a)(1)(A).

[32] 29 U.S.C. § 1104(a)(1)(B).

[33] *Sweda*, 923 F.3d at 331.

[34] *Id.* at 331-332.

[35] *Id.* at 331.

[36] *Renfro*, 671 F.3d at 318.

[37] *Id.* at 326.

[38] *Id.*

[39] Second Amended Complaint at ¶¶ 33-99, *Renfro v. Unisys Corp.*, No. 07–2098, 2010 WL 1688540 (E.D.Pa. Apr. 26, 2010), 2009 WL 3814680.

[40] *Renfro*, 671 F.3d at 327.

[41] *Id*. at 326-27.

[42] *Id*. at 328.

[43] *Sweda*, 923 F.3d at 324.

[44] *Id*. at 330.

[45] *Id.* at 324.

[46] *Id.* at 330-331.

[47] *Id.* at 332.

[48] *Id.*

[49] *Id.* at 333.

[50] *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).

[51] *Karg v. Transamerica Corp.*, No. 18-134, 2019 WL 3938471 at *1 (N.D. Iowa Aug. 20, 2019).

[52] *Id.* at *6.

[53] *Divane v. Northwestern Univ.*, No. 18-2569, 2020 WL 1444966 at *4, *6 (7th Cir. Mar. 25, 2020). In *Divane,* the district court allowed extensive discovery including from several third parties while the parties briefed and deferred motions to dismiss. The plaintiff participants moved to amend their amended complaint to add claims six days before the close of an extended discovery period. Judge Alonso of the district court denied the amendments and dismissed the amended complaint, as then affirmed by the court of appeals earlier this week. Our review today is before discovery and based solely on the allegations. Unlike Judge Alonso, we do not have over a year of discovery.

[54] *Id.* at *7-8.

[55] *Id.* at *8.

[56] *Id.*

[57] ECF Doc. No. 10 at ¶ 38.

[58] *Divane*, No. 18-2569, at *7.

[59] *Id.*

[60] *Nicolas v. Trustees of Princeton Univ.*, No. 17–3695, 2017 WL 4455897 at *1 (D.N.J. Sept. 25, 2017).

[61] *Id.* at *4.

[62] *Id.* at *5.

[63] ECF Doc. No. 10 at ¶ 99 ("As demonstrated by the chart below, in several instances, Defendants failed to prudently monitor the Plan to determine whether the Plan was invested in the lowest-cost share class and/or collective trusts available for the Plan's mutual funds, which are identical to the mutual funds in the plan in every way except for their lower cost").

[64] *Id.* at ¶¶ 96, 99, 111.

[65] *Id.* at ¶¶ 123-127 (citing case law supporting jumbo plan per-participant fees of, at most, $45.42, $18, $27, and $35). In their reply, Defendants wrongly assert the participants did not allege a reasonable fee amount besides "a vague, factually unsupported allegation" of "less than $50." ECF Doc. No. 24 at 14.

[66] ECF Doc. No. 10 at ¶¶ 96, 99, 111.

[67] *Sweda*, 923 F.3d at 331.

[68] ECF Doc. No. 19-1 at 15-16.

[69] ECF Doc. No. 10 at ¶ 99.

[70] *Id.* at ¶¶ 123-127.

[71] ECF Doc. No. 24 at 7; ECF Doc. No. 10 at ¶ 58 ("Based on reasonable inferences from the facts set forth in this Complaint, during the Class Period Defendants failed to have an independent system of review in place to ensure participants in the Plan were being charged appropriate and reasonable fees for the Plan's investment options.").

[72] *Sweda*, 923 F.3d at 333 ("Although Penn may be able to demonstrate that its process was prudent, we are not permitted to accept Penn's account of the facts or draw inferences in Penn's favor at this stage of litigation.").

[73] *Id.* at 331.

[74] *Nicolas*, at *5.

[75] *Sweda*, 923 F.3d at 330.

[76] ECF Doc. No. 19-1 at 6-7.

[77] ECF Doc. No. 10 at ¶ 94.

[78] *Id.* at ¶¶ 96, 99, 111.

[79] The participants allege recordkeeping fees exceeded $160 per participant. ECF Doc. No. 10 at ¶ 125. In the Motion to Dismiss, Defendants stated the Plan paid $62 per participant for the first six months of the Class Period and $50 per participant for the remainder of the Class Period. ECF Doc. No. 19-1 at 9. In their response, the participants explained lack of access to accurate Plan data caused the erroneous fee estimation but reiterated the allegation the Plan fiduciaries should have secured per-participant fees much *lower* than $50. ECF Doc. No. 21-1 at 24.