# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JERRY PINNELL, JEREMY FERNANDEZ AND SHANE PERRILLOUX, individually and on behalf of all others similarly situated, ) | |
| Plaintiffs, ) | **CIVIL ACTION NO**.: **2:19-CV-05738-MAK** |
| v. ) | |
| TEVA PHARMACEUTICALS USA, INC., BOARD OF DIRECTORS OF TEVA PHARMACEUTICALS USA, INC., TEVA PHARMACEUTICALS USA, INC. INVESTMENT COMMITTEE, and JOHN AND JANE DOES 1-30. ) | |
| Defendants. ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF <u>CLASS NOTICE AND SCHEDULING OF A FAIRNESS HEARING</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ...............................................................................................1

II.  THE PROPOSED SETTLEMENT .....................................................................1

III.  CURRENT POSTURE OF THE CASE ..............................................................2

    A.  The Governing Law ....................................................................................2

    B.  The Settlement Satisfies the *GMC* Test, Underscoring its Fairness ........3

        i.  Arms' Length Negotiations ...............................................................3

        ii.  Amount of Discovery ......................................................................4

        iii.  Experience of Counel ....................................................................5

        iv.  Objections.......................................................................................5

    C.  The Third Circuit's *Girsh* Factors also are Satisfied ..............................5

        i.  The Complexity, Expense, and Likely Duration of the Litigation .................6

        ii.  The Reaction of the Class to the Settlement.....................................6

        iii.  The Stage of the Proceedings and the Amount of Discovery Completed ........6

        iv.  The Risks of Establishing Liability and Damages ..........................7

        v.  The Risks of Maintaining the Class Action through Trial ..............8

        vi.  The Ability of the Defendants to Withstand a Greater Judgment ..................9

        vii.  The Range of Reasonableness of the Settlement Fund in Lilght of the Best Possible Recovery and in Light of all Attendant Risks Litgation ...................9

        viii.  The Requirements of Fᴇᴅ. R. Cɪᴠ. P. F23(e)(2) Also Are or Likely Will Be Satisfied ........................................................................11

IV.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ..............................12

    A.  The Proposed Notice Plan Meets the Requirements of Due Process....................12

    B.  Description of the Notice Plan......................................................................12

V.  CLASS CERTIFICATON IS APPROPRIATE....................................................14

    A.  The Proposed Class Satisfies the Rquirements of Rule 23(a)...........................15

        i.  Numerosity......................................................................................15

        ii.  Commonality...................................................................................15

        iii.  Typicality .....................................................................................17

        iv.  Adequacy .....................................................................................18

    B.  The Proposed Class Meets the Requirements of Rule 23(b)(1)...........................19

    C.  Capozzi Alder, P.C. Should Be Appointed As Class Counsel..............................19

VI.  CONCLUSION...................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Statutes**

FED. R. CIV. P. Rule 23(b)(1) ................................................................................ 19

Rule 23(b)(1)(B) .................................................................................................... 19

FED. R. CIV. P. 23(c)(2) .......................................................................................... 12

FED. R. CIV. P. 23(e) ................................................................................................ 2

FED. R. CIV. P. 23(e)(1)(B)(i) ............................................................................ 3, 10

FED. R. CIV. P. 23(e)(2) ..................................................................................... 3, 12

Rule 23(e)(2)(C)(ii) ............................................................................................... 12

Rule 23(e)(2)(D) .................................................................................................... 12

FED. R. CIV. P. 23(e)(2)(c)(iv) ............................................................................... 11

Rule 23(e)(3) ........................................................................................................... 3

FED. R. CIV. P. 23(g)(4) .......................................................................................... 19

ERISA § 502(a)(2) ................................................................................................. 14

*Manual for Complex Litigation*, § 21.632 (4th Ed. 2004) ................................... 14

**Cases**

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) .......................................................... 12

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................... 14

*AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ................................................................................ 16

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ................................................................................. 15, 17

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) .................................................................................. 18

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................................................................ 12

*Brieger v. Tellabs, Inc.*,
659 F. Supp. 2d 967 (N.D. Ill. 2009) ................................................................................... 8

*Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................................................ 7

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012) .............................................................................................. 18

*Donovan v. St. Joseph County Sheriff*,
2012 WL 1601314 (N.D. Ind. May 3, 2012) ..................................................................... 19

*In re Flonase*,
951 F.Supp.2d 739 (E.D. Pa. 2013) ..................................................................................... 7

*Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) .......................................................................................... Passim

*Girsh v. Jepson*,
521 F.2d 153 (3d. Cir. 1975) ....................................................................................... Passim

*Halley v. Honeywell Int'l, Inc.*,
861 F.3d 481 (3d Cir. 2017) ................................................................................................ 6

*Harry M. v. PA Dept. of Public Welfare*,
2013 WL 1386286 (M.D. Pa. Apr. 4, 2013) ................................................................. 2, 12

*Honeywell Int'l Sec. Litig.*,
211 F.R.D. 255 (D.N.J. 2002) ........................................................................................... 17

*Honeywell Int'l ERISA Litig.*,
2004 WL 3245931 (D.N.J. Sept. 14, 2004) ...................................................................... 17

*Ikon Office Solutions, Inc.*,
191 F.R.D. 457 (E.D. Pa. 2000) ("*Ikon I*") ........................................................... 15, 17, 19

*Imprelis Herbicide Marketing, Sales Practices and Products Liability Litig.*,
2013 WL 504857 (E.D. Pa. Feb. 12, 2013) ...................................................................... 14

*Janney Montgomery Scott LLC Fin. Consult. Litig.*, No.,
2009 WL 2137224 (E.D. Pa. July 16, 2009) ..................................................................... 13

*Krueger v. Ameriprise Financial*,
2015 WL 4246879 (D. Minn. July 13, 2015) .................................................................... 12

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ................................................................ 12

*Linerboard Antitrust Litig.*,
321 F. Supp. 2d 619 (E.D. Pa. 2004 ................................................................................ 9

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ........................................................................................................ 19

*McDonald v. Edward Jones*,
791 Fed.Appx. 638 (8th Cir. 2020) ................................................................................ 12

*Mehling v. New York Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007) ................................................................................ 17, 19

*Merck & Co., Inc., Vytorin ERISA Litig.*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) .......................................................................... 8

*Merck & Co., Inc. Securities, Derivative & ERISA Litig.*,
2009 WL 331426 (D.N.J. Feb. 10, 2009) ....................................................................... 14

*Moore v. Comcast Corp.*,
268 F.R.D. 530 (E.D. Pa. 2010) ..................................................................................... 15

*Moore v. Simpson*,
1997 WL 570769 (N.D. Ill. Sept. 10, 1997) .................................................................. 16

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................................................ 12

*Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016) ..................................... Passim

*New Directions Treatment Servs. v. City of Reading*,
490 F.3d 293 (3d Cir. 2007) ........................................................................................... 18

*New Jersey Tax Sales Certification Antitrust Litig.*,
750 Fed.Appx 73 ("*NJ Tax Sales*") ........................................................................... 2, 6

*Pfeifer v. Wawa, Inc.*,
2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ................................................................ 19

*Pet Food Products Liability Litig.*,
629 F.3d 333 (3d Cir. 2010) ........................................................................................... 14

*Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ..................................................................................... Passim

*Reinig v. RBS Citizens, N.A.*,
912 F.3d 115 (3d Cir. 2018)...................................................................................................... 15

*Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) ......................................................................................... 7

*Reibstein v. Rite Aid Corp.*,
761 F.Supp.2d 241 (E.D. Pa. 2011) ........................................................................................... 9

*Ripley v. Sunoco, Inc.*,
287 F.R.D. 300 (E.D. Pa. June 26, 2012)........................................................................... 15, 18

*Rodriguez v. Nat'l City Bank*,
726 F.3d 372 (3d Cir. 2013)..................................................................................................... 15

*Schering-Plough Enhance*,
2012 WL 1964451 (D.N.J. May 31, 2012) ..................................................................... 15, 16, 17

*Schering-Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009)................................................................................................. 8, 19

*Schering-Plough/Merck*,
2010 WL 1257722 (D.N.J. March 26, 2010)............................................................................ 18

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010)..................................................................................................... 19

*Spano v. The Boeing Co.*,
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................................................................... 12

*Stanford* v. *Foamex, L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009) ......................................................................................... 14, 17

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001)..................................................................................................... 15

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011)....................................................................................................... 9

*Thomas v. SmithKline Beecham Corp.*,
201 F.R.D. 386 (E.D. Pa. 2001) ............................................................................................... 15

*Wal-Mart Stores, Inc., v. Dukes*,
564 U.S. 338 (2011) ........................................................................................................... 15, 26

*Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004).............................................................................................Passim

## I.       INTRODUCTION

Plaintiffs, participants in the Teva Pharmaceuticals Retirement Savings Plan (the "Plan"), commenced this action against Defendants[1] with the filing of a Complaint on December 6, 2019 (ECF 1) and an amended Complaint on February 5, 2020 (ECF 10.).[2]  The Amended Complaint alleges Defendants breached their fiduciary duties by failing to prudently and loyally manage the Plan.  Am. Cmplt.,[3] ¶¶129-34, 136-41.  Defendants strongly dispute Plaintiffs' allegations and deny liability for the alleged ERISA[4] violations.  Defendants maintain the Plan's fiduciaries selected and retained prudent, well-performing, and reasonably priced investment options, and  the Plan's fiduciaries ensured  participants paid only reasonable fees associated with their participation in the Plan throughout the putative class period.

On October 13, 2020, the parties participated in a mediation via Zoom videoconference before Hunter R. Hughes, III, a neutral, third-party private mediator with experience mediating ERISA class actions.  The Parties agreed to a settlement of $2,550,000.00 and signed a term sheet. Over the last few weeks, the Parties have negotiated the specific terms of the Settlement Agreement and present it for the Court's preliminary approval.[5]

## II.      THE PROPOSED SETTLEMENT

---

[1] Plaintiffs and Defendants are collectively referred to as the "Parties."

[2]  The full procedural history of this matter is recounted in the Declaration of Mark K. Gyandoh ("Gyandoh Decl.") which is filed contemporaneously with this memorandum.

[3] "Am. Cmplt." refers to the Amended Complaint (ECF 10).

[4] Employee Retirement Income Security Act of 1974.

[5]  The Settlement Agreement, attached to the Gyandoh Decl. as Exhibit 1, itself has several exhibits.  These exhibits are: A (Settlement Notice); B (Plan of Allocation); C (Preliminary Approval Order); D (Final Order); and E (CAFA Notice).

The Settlement provides Defendants, through their insurer, will pay $2,550,000.00 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation.[6]  In exchange, Plaintiffs and the Plan will dismiss their claims, as set forth more fully in the Settlement Agreement.  The Settlement Agreement also provides for the payment of attorneys' fees and Plaintiffs' Case Contribution Awards, both of which are subject to Court approval.

## III.    THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR BOTH PRELIMINARY AND FINAL APPROVAL

### A.  The Governing Law

Although the Court must scrutinize the Settlement Agreement for fairness, "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*").  "Review of a proposed class action settlement involves a two-step process:  preliminary approval and a subsequent fairness hearing."  *Harry M. v. PA Dept. of Public Welfare*, 2013 WL 1386286, at *1 (M.D. Pa. Apr. 4, 2013).  At the preliminary approval stage, courts must apply the *GMC* test to determine whether:  "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery;  (3) the proponents of the settlement are experienced in similar litigation;  and (4) only a small fraction of the class objected."  *In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GMC*").  If these factors are satisfied, the settlement is presumed to be fair.  *Id.*  At the final approval stage, the district court must determine whether "the proposed settlement is 'fair, reasonable and adequate.'"  *In re: New Jersey Tax Sales Certification Antitrust Litig.*, 750 Fed.Appx 73, 77 ("*NJ Tax Sales*"), quoting FED. R. CIV. P. 23(e).

---

[6] Attached to the Settlement Agreement as Exhibit B, the Plan of Allocation is premised on calculating a Plan participant's pro rata distribution based upon the individual's balances in the Plan during the Class Period.

To make this determination, courts in this circuit employ the more rigorous test set forth in *Girsh v. Jepson*, 521 F.2d 153 (3d. Cir. 1975), which requires analysis of:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risk of litigation.

*Girsh*, 521 F.2d at 157.

Amendments to Rule 23 also took effect on December 1, 2018.  The amendments provide preliminary approval should be granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)."  FED. R. CIV. P. 23(e)(1)(B)(i).  Rule 23(e)(2), in turn, now specifies the factors to be considered in determining whether a settlement merits final approval:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[7] and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  Here, the Settlement easily satisfies all of the above standards.

## B.  The Settlement Satisfies the *GMC* Test, Underscoring its Fairness

### i.    Arms' Length Negotiations

---

[7] Rule 23(e)(3) requires "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  FED. R. CIV. P. 23(e)(3).  There are no agreements, other than the Settlement itself, in this case.

Settlement negotiations were certainly arm's-length, readily satisfying the first prong of the *GMC* test.  The October 13 mediation with Hunter Hughes was the culmination of several months of the parties exchanging settlement communications.  Plaintiffs first sent a 3-page written settlement demand to Defendants on May 22, 2020.  Defendants responded on June 5th seeking further information from Plaintiffs to support their demand.  Plaintiffs responded with an August 13, 2020 letter attaching several supporting exhibits.  Defendants responded with another letter on September 18, 2020, articulating legal and factual arguments and providing exhibits and expert analysis in support of their defenses regarding the merits of Plaintiffs' claims.  Plaintiffs replied on September 25, 2020.  Also, on September 25th, the Parties submitted ex parte confidential settlement statements to Magistrate Judge Heffley in preparation for an October 2, 2020 scheduled settlement conference.  On September 30, 2020, the settlement conference was cancelled leading to the Parties' agreement to attend a full-day mediation with Mr. Hughes.

### ii.    Amount of Discovery

Next, the Court must determine whether there was sufficient discovery before the settlement.  *GMC*, 55 F.3d at 785.  The basis behind the second prong of the *GMC* test is Parties should have an "adequate appreciation" of the merits in settling a case.  *Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) ("*Prudential*") (citing *GMC,* 55 F.3d at 813).  The discovery efforts in this Action were substantial. *See* Gyandoh Decl., ¶¶ 8-15.  Following the filing of the Amended Complaint, the Parties exchanged Rule 26(a)(1) Disclosures in which they identified relevant witnesses and categories of documents.  Thereafter, the Parties exchanged document requests, interrogatories, and requests for admission resulting in Defendants producing nearly fifty-thousand pages of documents, including ESI.  Additionally,

each of the Named Plaintiffs presented for a deposition.[8] From independent research, discovery productions, and depositions, Plaintiffs' counsel, in consultation with Plaintiffs' consulting expert witness, were able to assess the strengths and weaknesses of Plaintiffs' claims, as well as calculate potential Class-wide damages.  *See* Gyandoh Decl., ¶18, 20.  The second *GMC* prong is thus amply satisfied.

### iii.      Experience of Counsel

Third, both Plaintiffs' counsel and Defendants' counsel are experienced in ERISA class actions of this type and approve of the Settlement.  Class Counsel is currently serving as lead or co-lead counsel in dozens of analogous actions across the country.  As discussed in greater detail *infra*, Section III.C, the vast experience of Class Counsel in analogous actions weighs strongly in favor of the fairness of the proposed Settlement, a Settlement which Class Counsel firmly stands behind. Gyandoh Decl., ¶23. Counsel for Defendants, who have agreed to the Settlement, are also one of the preeminent firms in the country defending analogous ERISA class actions.  This prong of *GMC* is thus satisfied.

### iv.      Objections

The fourth prong of the *GMC* test is not fully assessable at this time.[9]

### C.  The Third Circuit's *Girsh* Factors also are Satisfied

---

[8] Deposition of Gerald Pinnell took place on August 25, 2020; deposition of Jeremy Fernandez took place on June 11, 2020; deposition of Shane Perrilloux took place on June 4, 2020. Gyandoh Decl. 14.

[9] Under the fourth prong of the *GMC* test, the fairness of a proposed settlement is also supported where there is only a small fraction of objections by Settlement Class members.  While this factor is indisputably critical to a fairness analysis, it is premature to assess this factor at this stage, as notice to proposed Class members has not yet been provided.  If the Court preliminarily approves the Settlement and authorizes notice to be sent to the Settlement Class, Plaintiffs' Counsel will address any opposition to the Settlement in the final approval papers in advance of the Fairness Hearing.

Although satisfaction of the *GMC* test is sufficient for preliminary approval, the Settlement also meets the more exacting approval standard articulated by the Third Circuit in *Girsh* and in Rule 23(e)(2).  A court may approve a settlement even if it does not find all of these factors militate in favor of approval.  *NJ Tax Sales*, 750 Fed. Appx. at 77, citing *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 489-90, 491 (3d Cir. 2017) (affirming settlement approval where some factors did not weigh in favor of settlement).

### i.   The Complexity, Expense, and Likely Duration of the Litigation

"The first factor 'captures the probable costs, in both time and money, of continued litigation.'"  *In re: Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*") (quoting *Warfarin*, 391 F.3d at 535-36 (internal quotation omitted)).  Here, the probable costs of continued litigation with respect to both time and money are high.  Considerable additional discovery, both paper and testimonial, would be required before the case would be trial ready, and there would be voluminous briefing ahead in the absence of the proposed Settlement.  The Settlement in this Action comes at an opportune time given, if the litigation continues, there would be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice.

### ii.   The Reaction of the Class to the Settlement

As noted in footnote 9, *supra*, analysis of this factor is premature as notice of the proposed Settlement will be disseminated to the Settlement Class only after this Court grants preliminary approval of the Settlement.

### iii.   The Stage of the Proceedings and the Amount of Discovery Completed

As with the second prong of the *GMC* test, pursuant to the third *Girsh* factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to

Settlement," including the type and amount of discovery already undertaken.  *GMC*, 55 F.3d at 813.  "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *NFL*, 821 F.3d at 438-39 (3d Cir. 2016), quoting *Warfarin*, 391 F.3d at 537 (internal quotation omitted).  As discussed *supra*, and in Plaintiffs' Counsel's declaration, the totality of the Parties' discovery efforts favors approval of the Settlement.

### iv.   The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors, which require examination of the risks of establishing liability and damages respectively, are "closely related" and therefore are properly addressed together.  *In re Flonase*, 951 F.Supp.2d 739, 744 (E.D. Pa. 2013).  "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them," *GMC*, 55 F.3d at 814, and these inquiries "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."  *Prudential*, 148 F.3d at 319; *see also In re: Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001), quoting *GMC*, 55 F.3d at 816.

In this complex ERISA Action, Plaintiffs would proffer their liability and damages experts, which would undoubtedly be countered by Defendants' proffered experts.  Ultimately, a battle of experts presenting differing damages calculations would ensue and the factfinder "would therefore be faced with competing expert opinions representing very different damage estimates[,] . . . adding further uncertainty."  *In re: Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003).  Although a trial on the merits in any case always entails some risk, in the context of ERISA breach of fiduciary duty class actions, the risk is even more considerable.  As the United States

District Court for the District of New Jersey noted when analyzing the reasonableness of the settlement of ERISA breach of fiduciary duty allegations, "[r]isk is inherent in litigation.  In this case, the risks of litigation are great because Plaintiffs' claims involve complex and contested questions of law and fact."  *In re: Merck & Co., Inc., Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *8 (D.N.J. Feb. 9, 2010).  Given the similarly complex and contested questions of law and fact here, the same great risks of a trial on the merits are inherent in this Action.

Indeed, the undersigned is particularly qualified to realistically evaluate the risks of continued litigation, as he tried an analogous case to an unfavorable verdict for plaintiffs in *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009).

### v.   The Risks of Maintaining the Class Action through Trial

The sixth *Girsch* factor requires the Court to examine the risks of maintaining the class-action through trial due to the fact "[t]he value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits."  *GMC*, 55 F.3d at 817.  "Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action."  *Id.*

The Third Circuit has referred to ERISA derivative actions brought on behalf of a plan and its participants, such as the instant Action, as "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class."  *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("*Schering-Plough ERISA*").  However, the Court had yet to rule on class certification at the time the Parties agreed to the proposed Settlement, and Defendants had already asserted arguments in opposition to Plaintiffs' motion for class certification.  This factor, too,

militates in favor of settlement, as the settlement eliminates the risks of not being able to establish and maintain the class through trial.

### vi.   The Ability of the Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor requires the Court to consider "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Warfarin*, 391 F.3d at 537-38.   The Third Circuit has noted, "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011).   This is because, "when there is no 'reason to believe that Defendants face any risk of financial instability[,] . . . this factor is largely irrelevant.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (quoting *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 254 (E.D. Pa. 2011)).   Thus, "the settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial." *In re: Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004).

While Teva could likely withstand a judgment in an amount larger than the Settlement amount, the risks and expenses attendant to continuing this litigation, combined with the immediacy of the benefit to Settlement Class members, easily outweigh this factor.

### vii.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all Attendant Risks of Litigation

"According to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth [*Girsh*] factor)." *GMC*, 55 F.3d at 806.   To assess the reasonableness of a settlement in a case such as this, seeking primarily monetary relief, a court

should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." *NFL,* 821 F.3d at 440, quoting *Prudential*, 148 F.3d at 322 (internal quotation omitted).   In determining the range of recovery in this Action, at one extreme is the possibility Defendants might prevail on one or more of their legal or factual arguments to defeat liability entirely.   While Plaintiffs are confident of the strength of the claims asserted, they recognize this possibility cannot be discounted completely.

If this case were to proceed to trial, Plaintiffs believe the realistic maximum damages are between $3.3 million and $17.6 million, which is based on Plaintiffs' allegations the Plan funds were invested in the wrong share class of the T.Rowe Price target date funds for much of the Class Period and the Plan fiduciaries failed to convert these same target date funds to the lowest cost collective trusts by the start of the Class Period.   Again, Defendants vigorously contest these figures.   Indeed, Defendants have maintained —even if they were deemed liable on Plaintiffs' fiduciary-breach claims—the named Plaintiffs and a significant percentage of the members of the putative class would have no damages at all, based on the strong performance of the investment options offered through the Plan during the relevant period and the reasonableness of the Plan's recordkeeping fees.

Moreover, these figures are dependent on the Court finding Defendants' fiduciary breaches to have occurred by the start of the Class Period on December 13, 2013, as alleged in the Amended Complaint.   Am. Cmplt., ¶6.   But there is no guarantee this date would ultimately prevail or Plaintiffs otherwise would be successful in establishing the claimed amount of damages.   The use of a later breach date and/or a determination one of the challenged decision-making processes was prudent could result in a recovery well below the $2,550,000.00 Settlement amount.   Given this

wide range of potential damage outcomes at trial and the uncertainty of the Plan's actual losses, the $2,550,000.00 monetary Settlement is fair and reasonable.[10]

### viii.   The Requirements of FED. R. CIV. P. 23(e)(2) Also Are or Likely Will Be Satisfied

Rule 23(e)(1)(B)(i), as amended, provides preliminary approval should be granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1)(B)(i). Rule 23(e)(2) now primarily combines portions of the *GMC* test with several of the *Girsh* factors. As a result, because the instant Settlement satisfies the *GMC* test and the *Girsh* factors, the requirements of Rule 23(e)(2) are substantially met for purposes of both preliminary and final approval. The three factors not encompassed by the *GMC* test and the *Girsh* factors the Court is to consider when determining whether to grant **final** approval are:  (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims";  (2) "the terms of any proposed award of attorney's fees, including timing of payment";  and (3) whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).[11]

As detailed *infra*, Section II.B, the proposed Notice Plan submitted by the Parties comports with due process. This, combined with the Plan of Allocation submitted by the Parties, satisfies the requirement of Rule 23(e)(2)(C)(ii). Additionally, a proposed maximum of 33 1/3% of the Settlement Amount in attorneys' fees is contained in the proposed Class Notice submitted by the Parties. This amount is in line with analogous awards in ERISA class action cases and will likely

---

[10]  Plaintiffs will analyze this factor further in connection with the filing of the motion for final approval of the Settlement.

[11]  There are no agreements other than the Settlement Agreement, thus FED. R. CIV. P. 23(e)(2)(c)(iv) is irrelevant.

be approved by the Court, so the requirement of Rule 23(e)(2)(C)(ii) will likely be met.[12]  Finally, the Plan of Allocation submitted by the parties clearly treats class members equitably relative to each other, thereby satisfying the requirement of Rule 23(e)(2)(D).  Here, the Court can easily determine it is likely to grant final approval under Rule 23(e)(2), so preliminary approval is appropriate under Rule 23(e)(1)(B)(i).

## IV.     THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.  The Proposed Notice Plan Meets the Requirements of Due Process

In addition to preliminarily approving the Settlement Agreement, the Court must also approve the proposed means of notifying class members.  FED. R. CIV. P. 23(c)(2); *see also Harry M.*, 2013 WL 1386286, at *2.  "Adequate notice is essential to securing due process of law for the class members, who are bound by the judgment entered in the action."  *Harry M.*, 2013 WL 1386286, at *2.  In order to satisfy due process considerations, notice to Settlement Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted).

As set forth below, Plaintiffs' proposed means of providing Notice to the Settlement Class readily satisfies this standard as well as the mandates of due process.  The combination of direct mail and publication of the Settlement Notice on a dedicated website should cause actual notice to reach a very high percentage of affected Plan participants and beneficiaries.

### B.  Description of the Notice Plan

---

[12] *See McDonald v. Edward Jones*, 791 Fed.Appx. 638, 640 (8th Cir. 2020) (affirming judgment awarding the class counsel attorneys' fees of 1/3 of the settlement fund); *see also Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Spano v. The Boeing Co.*, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Krueger v. Ameriprise Financial*, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

As an initial matter, Class Counsel has asked the Court to approve the selection of JND Legal Administration as the Settlement Administrator for the Settlement. *See* Preliminary Approval Order, ¶ 8. JND is an industry leader in class action settlement administration and has successfully handled dozens of class settlements. *See* https://www.jndla.com/class-action-administration.

The Settlement Notice plan includes multiple components designed to reach the largest number of Settlement Class members possible. First, the Settlement Class Notice, attached as Exhibit A to the Settlement Agreement, will be sent via First Class mail, postage prepaid, to the last known address of each Settlement Class Member within (30) days of the Court's order granting preliminary approval of the Settlement. SA,[13] Art. 2, §§ 1.48, 2.4, and 14.20. Additionally, by the same date, the Settlement Class Notice, along with other litigation-related documents such as a list of frequently asked questions and the Settlement Agreement with all of its Exhibits, will be posted on a dedicated Settlement website established by Plaintiffs' counsel. The Class Notice also provides contact information for Class Counsel. Class Notice, p. 2. Class Counsel also will establish and monitor a dedicated, toll-free Settlement telephone number with an Interactive Voice Response system which will have answers to frequently asked questions and also provide to Settlement Class Members the opportunity to leave a voicemail for Class Counsel should they have any additional questions regarding the Settlement.

The Settlement Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e).[14]

---

[13] "SA" refers to the Settlement Agreement.

[14] Indeed, individual notice by First Class mail alone has been recognized by this Court as a manner of delivery of notice which comport with due process. *See In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*, No., 2009 WL 2137224, at *7 (E.D. Pa. July 16, 2009). Plaintiffs'

## V.     CLASS CERTIFICATION IS APPROPRIATE

In determining whether an action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a court should preliminarily determine whether the proposed class satisfies the numerosity, commonality, typicality and adequacy of representation criteria set forth in Rule 23(a), as well as at least one of the subsections of Rule 23(b).[15]  *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997);  *In re: Imprelis Herbicide Marketing, Sales Practices and Products Liability Litig.*, 2013 WL 504857, at *3 (E.D. Pa. Feb. 12, 2013) (citing *Manual for Complex Litigation*, § 21.632 (4th Ed. 2004)).  In this matter, the proposed Settlement Class satisfies each of the prerequisites of Rule 23(a) as well as at least one of the alternate requirements of Rule 23(b).  Accordingly, Plaintiffs request the following proposed Settlement Class be preliminarily certified for settlement purposes:

> All persons who participated in the Plan at any time during the Class Period (December 6, 2013 through June 28, 2019), including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period.  Excluded from the Settlement Class are Defendants and their Beneficiaries.

Precedent, including from within the Third Circuit, is clear these types of ERISA § 502(a)(2) breach of fiduciary duty claims are well-suited for class status as they are brought, by definition and in practice, on behalf of retirement plans and affected participants.[16]

---

proposed Settlement Notice plan goes well beyond individual notice by First Class mail, further underscoring its fairness and appropriateness.

[15] In the settlement context, the requirements of Rule 23, particularly those designed to protect absentees by blocking unwarranted or overbroad class definitions, remain undiluted, even heightened.  *In re: Pet Food Products Liability Litig.*, 629 F.3d 333, 341 (3d Cir. 2010) ("*Pet Food*").

[16] *See, e.g.*, *In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009); *Stanford* v. *Foamex, L.P.*, 263 F.R.D. 156, 175

### A. The Proposed Class Satisfies the Requirements of Rule 23(a)

#### i. Numerosity

When there "are thousands of participants in [a] plan in any given year," the court "should make common sense assumptions regarding numerosity." *In re: Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 462 (E.D. Pa. 2000) ("*Ikon I*") (numerosity satisfied in analogous ERISA breach of fiduciary duty case where there were thousands of plan participants); *see also Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 391 (E.D. Pa. 2001). Here, there are more than 14,000,[17] which is more than sufficient to find joinder of all parties is impracticable, thereby satisfying Rule 23(a)(1). *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (generally more than 40 is sufficient).

#### ii. Commonality

"Rule 23(a)(2)'s commonality requirement requires the putative class members 'share at least one question of fact or law in common with each other.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018), quoting *Warfarin*, 391 F.3d at 528; *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("A putative class satisfies Rule 23(a)'s commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'"). Examples are when class members challenge the same conduct of the defendants, or when plaintiffs show class members suffered the same injury. *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 308 (E.D. Pa. June 26, 2012) (citing *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 348 (2011)). In fact, "[a] finding of

---

(E.D. Pa. 2009); *Schering-Plough Enhance*, 2012 WL 1964451 (D.N.J. May 31, 2012); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 538 (E.D. Pa. 2010).

[17] According to the 2018 Form 5500 submission for the Plan, as of December 31, 2018, the Plan had over 14,000 participants with account balances.

commonality does not require that all class members share identical claims, and indeed 'factual differences among the claims of the putative class members do not defeat certification,'" *In re: AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002) (internal citation and quotation omitted).

Here, the overarching questions of law and fact applicable to all Settlement Class members are whether the Defendants breached fiduciary duties owed to the Plan and its participants by: selecting and retaining investment options in the Plan despite the high cost of the funds in relation to other comparable investments;  failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plan;  failing to investigate collective trusts as alternatives to mutual funds, even though they generally provide the same investment management services at a lower cost;  and failing to monitor or control the compensation paid for recordkeeping services.  These queries are vital to each and every potential Settlement Class member during the Class Period and, in and of themselves, are sufficient to meet the commonality requirement of Rule 23(a)(2).  *See Wal-Mart*, 564 U.S. at 355;  *Schering-Plough Enhance*, 2012 WL 1964451, at *3 (D.N.J. May 31, 2012) (where the complaint alleged breach of fiduciary duties owed under ERISA, the determination involves issues of law and fact identical for all class members thereby satisfying the commonality requirement).  However, this Action also presents many common questions of law and fact, applicable to all members of the Settlement Class, which predominate over any questions affecting solely individual potential members, including:  (1) whether Defendants were fiduciaries of the Plan; (2) whether the Plan and the Participants were injured by such breaches; and (3) whether the Class is entitled to damages.  "All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants." *Moore v. Simpson*, 1997 WL 570769, at *4 (N.D. Ill. Sept.

16

10, 1997).  Consequently, Plaintiffs demonstrate a "level of commonality more than sufficient

under Rule 23(a)(2)."  *In re: Honeywell Int'l Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002).

### iii.   Typicality

The "typicality requirement [contained in Rule 23(a)(3)] is designed to align the interests

of the class and the class representatives so that the latter will work to benefit the entire class

through the pursuit of their own goals."  *Warfarin*, 391 F.3d at 531 (internal quotation marks

omitted).  This requirement is satisfied here because the claims of the Named Plaintiffs arise from

and challenge the same events or course of conduct giving rise to the claims of other Settlement

Class Members and are based on the same legal theory.[18]  Typicality is routinely satisfied in

putative class actions brought for breaches of fiduciary duty under ERISA.[19]

Plaintiffs' claims are typical of those of the Settlement Class as all were participants in the

Plan during the Class Period.  As a result, Plaintiffs and all participants in the Plan, *i.e.*, the

Settlement Class Members, sustained an economic loss arising out of Defendants' breaches of

fiduciary duty in violation of ERISA, a statute which explicitly states §502(a)(2) claims are

brought on behalf of retirement plans for plan-wide relief.  *See In re: Honeywell Int'l ERISA Litig.*,

---

[18] *See Baby Neal*, 43 F.3d at 58 ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.");  *Ikon I*, 191 F.R.D. at 463;  *Prudential*, 148 F.3d at 311-12 (holding typicality was satisfied by allegedly fraudulent scheme applying to all class members, even if different illegal sales practices were used on different beneficiaries).

[19] *See, e.g.*, *Schering-Plough Enhance*, 2012 WL 1964451, at *3 (D.N.J. May 31, 2012) (finding typicality satisfied because the claims of plaintiffs and the class members are based on the violation of duties owed under ERISA in the same course of conduct);  *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 475 (E.D. Pa. 2007) (holding, when certifying settlement class in ERISA breach of fiduciary duty case, the typicality requirement was met where breach of fiduciary duty claims challenged same allegedly unlawful conduct);  *Ikon I*, 191 F.R.D. at 465 (same); *Stanford*, 263 F.R.D. at 167 (same).

2004 WL 3245931, at *15 (D.N.J. Sept. 14, 2004).  Accordingly, since the interests of the Named Plaintiffs are aligned with those of the Settlement Class Members, typicality is satisfied.  *Schering-Plough/Merck*, 2010 WL 1257722, at *7 (D.N.J. March 26, 2010).

### iv.  Adequacy

"The adequacy requirement encompasses two distinct inquiries designed to protect the interests of absentee class members:  it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *Ripley*, 287 F.R.D. at 309; *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012).  This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted).  Here both prongs of the adequacy test are met.

The core of the analysis of the first prong is whether the named plaintiffs have interests antagonistic to those of the class.  FED. R. CIV. P. 23(a)(4); *see also New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).  Here, Named Plaintiffs have no interests antagonistic to those of the absent Settlement Class Members as demonstrated by the fact, ultimately, Named Plaintiffs seek to establish Defendants breached their fiduciary duties by continuing to offer inferior investment alternatives and pay excessive recordkeeping fees which caused the Plan and Settlement Class Members an economic loss.  As such, each member of the Settlement Class, just like the Named Plaintiffs, has a similar interest in recovering losses suffered by the Plan as a result of the conduct of the Defendants.  The second prong analyzes the capabilities and performance of Class Counsel under Rule 23(a)(4), based upon the factors set forth in Rule

23(g).  *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).  This prong, discussed *infra* in Section III.C, clearly demonstrates Plaintiffs' counsel is qualified to represent the Class.

### B.  The Proposed Class Meets the Requirements of Rule 23(b)(1)

The proposed Settlement Class satisfies Rule 23(b)(1)'s requirements for purposes of settlement.  "First, the Class may be certified under Rule 23(b)(1)(B) because prosecuting separate actions would create a risk of adjudications that 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." *Pfeifer v. Wawa, Inc.*, 2018 WL 4203880, at *5 (E.D. Pa. Aug. 31, 2018) (quoting FED. R. CIV. P. 23(b)(1)).  "[G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certifying the class would leave future plaintiffs without relief."  *Id.*  (quoting *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000).[20]

Here, the Complaint alleges breaches of fiduciary duties under ERISA.  Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-40 (1985).  Thus, the proposed Settlement Class meets the requirements of FED. R. CIV. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class.

### C.  Capozzi Adler, P.C. Should Be Appointed as Class Counsel

Federal Rule 23(g) specifies, unless a statute provides otherwise, a court certifying a class must appoint Class Counsel, and an attorney appointed to serve as Class Counsel "must 'fairly and

---

[20] *See also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claim brought under § 502(a)(2) are pragmatic examples of claims appropriate for certification as a Ruel 23(b)(1) class, as numerous courts have held."); *Mehling*, 246 F.R.D. at 476 ("Because Plaintiffs are alleging a breach of fiduciary duty, any finding as to Defendants' alleged breach in an individual suit will affect the interests of Plan participants not parties to the suit.").

adequately represent the interests of the class.'" *Donovan v. St. Joseph County Sheriff*, 2012 WL

1601314, at *8 (N.D. Ind. May 3, 2012), quoting FED. R. CIV. P. 23(g)(4).  Rule 23(g) directs

consideration of:

> (i) the work counsel has done in identifying or investigating
> potential claims in the action; (ii) counsel's experience in handling
> class actions, other complex litigation, and the types of claims
> asserted in the action; (iii) counsel's knowledge of the applicable
> law; and (iv) the resources counsel will commit to representing the
> class."

FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).

Capozzi Adler, P.C., and Mark K. Gyandoh, Esquire, Plaintiffs' Counsel in this Action,

have substantial experience litigating ERISA class actions and are well-qualified to weigh the risks

and benefits of continued litigation as compared to the relief provided by the Settlement.  Gyandoh

Decl., ¶¶2-3, 21.  Thus, Plaintiffs retained highly qualified and experienced attorneys in satisfaction

of Rules 23(a)(4) and 23(g).

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully move this Court to grant their Unopposed

Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of

Settlement Class, Approval of Class Notice, and Scheduling of a Fairness Hearing.

DATED:  November 18, 2020                Respectfully submitted,

                                         **CAPOZZI ADLER, P.C.**

                                         */s/ Mark K. Gyandoh*
                                         Mark K. Gyandoh, Esquire
                                         2933 North Front Street
                                         Harrisburg, PA 17110
                                         Telephone:  (717) 233-4101
                                         Facsimile:  (717) 233-4103

Donald R. Reavey, Esquire
**CAPOZZI ADLER, P.C.**
2933 North Front Street
Harrisburg, PA 17110
Telephone:  (717) 233-4101
Facsimile:  (717) 233-4103

*Class Counsel*